WILLIAM CHASE GILMAN
*vs.*
DAVID W. JACK

Kennebec County. Opinion, September 4, 1952.

*Hutchinson, Pierce, Atwood & Scribner,* for plaintiff.

*McLean, Southard & Hunt,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ. WILLIAMSON, J., did not sit.

THAXTER, J. This case involves the interpretation of section 17 (c) of the Public Utility Holding Company Act

of 1935, Tit. 15, U. S. C. A. Sec. 79. Such section reads as follows:

> "(c) After one year from the date of the enactment of this title, no registered holding company or any subsidiary company thereof shall have, as an officer or director thereof, any executive officer, director, partner, appointee, or representative, of any bank, trust company, investment banker, or banking association or firm, or any executive officer, director, partner, appointee or representative of any corporation a majority of whose stock, having the unrestricted right to vote for the election of directors, is owned by any bank, trust company, investment banker, or banking association or firm, except in such cases as rules and regulations prescribed by the Commission may permit as not adversely affecting the public interest or the interest of investors or consumers."

The problem comes before us on an information filed in the nature of *quo warranto* to test the eligibility of the informant to serve as a director of American Power & Light Company, and particularly the right as between the respondent and himself to serve as such director.

It is conceded that at the adjourned annual meeting of the company held October 16, 1951, at which eight directors were to be elected, Mr. Gilman, the informant, received 2,099,600 votes, and Mr. Jack, the respondent, who received the least number of votes cast among the first nine voted for, had 1,532,537. The question here, therefore, is whether Mr. Gilman or Mr. Jack is a director.

The respondent duly filed an answer to the information, which admits in the main the allegations set forth but denies the allegations that the petitioner is eligible to serve as a director in view of section 17 (c) of the Act or to have anything to say as a director about the substance of a pending dissolution decree of the American Power & Light Company.

On the contrary the answer sets forth specifically that the respondent and not the informant was the duly elected and qualified director of the company. The respondent accordingly prayed that he and not the informant be declared duly elected as a director and qualified to serve as such.

It is the contention of counsel for the informant that Mr. Gilman was duly elected a director of American Power & Light Company at such meeting and is entitled to serve as such director. It is the contention of the respondent that though Mr. Gilman on the face of the returns was elected a director, yet he is barred from serving as such because he was an appointee or representative of an investment banker within the meaning of section 17 (c). Such is the only issue in the case, for certainly he was not disqualified to serve for any other reason.

The determination of this question is one which involves the application of this statute to the undisputed facts of this case. The solution of this problem is of vital importance because the American Power & Light Company is in process of dissolution under the Public Utility Holding Company Act of 1935; and the decision of Mr. Gilman as a director, in connection with the plan of dissolution proposed, is vital.

The sitting justice found as a matter of law that the informant was not "an appointee, or representative, of any bank, trust company, investment banker, or banking association or firm," within the meaning of section 17 (c) of the Holding Company Act of 1935 and was eligible to serve as a director of American Power & Light Company. It was accordingly decreed that he and not the respondent, Mr. Jack, was a director of such company. Obviously he was not within any of the other prohibited classes enumerated in section 17 (c).

Exceptions were filed by the respondent to the decision of the sitting justice which held that Mr. Gilman was eligible

to serve as director. These exceptions are now before us. Unless he was the appointee or representative within the meaning of section 17 (c) *supra,* of certain investment bankers who voted for him and whose votes were necessary for his election as director, the exceptions must be overruled.

The respondent's claim that Mr. Gilman was the appointee or at least the representative of certain investment bankers is based upon the following facts. He was known to hold the same views on certain financial problems of the company as did these bankers. They urged him to run for director, voted for him, and their votes were necessary for his election.

These facts, however, are insufficient to constitute him their appointee or representative within the meaning of section 17 (c) *supra.* There is no evidence that he owed any express or implied duty to them to support or carry out their views. Nor is there any evidence that he was not to exercise his own independent judgment as to what would be for the best interests of the corporation in any of his acts as director thereof. On the other hand, the right of entire freedom of action on his part, as such director, is clearly established. Under such conditions the sitting justice properly found as a matter of law that he was not an appointee or representative of investment bankers within the meaning of section 17 (c) *supra.*

Counsel seem to us to argue that the intent of the Holding Company Act enacted in 1935 was to prevent banker control of public utilities. Such purpose of Congress is correctly stated. To that end certain persons are prohibited by section 17 (c) from acting as directors of registered holding companies; among those so disqualified is an appointee or representative of any investment banker. It makes no dif-

ference how high minded or otherwise qualified a person may be. If he comes within one of the prohibited classes enumerated, he is barred from holding office.

The Act is perfectly plain and definite. It is the legislative intent which it is our duty to carry out. That intent we must find primarily from the words of the statute which the Congress has used. It is only when the purpose is not clearly expressed that we have the right to use the usual outside aids to determine it. *Millett* v. *Marston,* 62 Me. 477. In this case this court has frowned on the practice of attempting to interpret what needs no interpretation. It says, citing ancient authorities, pages 478-479:

> " 'The fundamental maxim in the construction of instruments,' says Vattel, book 2, c. 17, sec. 263, 'is that it is not allowed to interpret what has no need of interpretation. Where an instrument is worded in clear and precise terms—when its meaning is evident and leads to no absurd conclusion—there can be no reason for refusing to admit the meaning which the words naturally import. To go elsewhere in search of conjectures in order to restrict or extend it, is but to elude it.' "

We think the failure to heed this warning in this instance has been responsible for counsel seeing in this statute what is not there; and for the distortion of it so that it reads differently from what its framers ever intended. The directors of our corporations in Maine are elected not appointed, and a person is not a representative of an outside interest such as an investment banker if he is not in any way under the control of such interest and answerable to it for his acts.

Mr. Aller, the president of American, who presided at the annual meeting, had certain duties to perform as such presiding officer; but they were ministerial duties, not judicial. In presuming to act in a judicial capacity by declaring that Mr. Gilman was not qualified to serve as a director under

section 17 (c), he usurped what he must have known was a prerogative of the court where the question would ultimately be decided. His decision on this point was without any standing whatever.

The absurd construction of this statute for which the respondent contends adds force to the conclusion of this court in *Millett* v. *Marston, supra,* that such course but makes confusion and ambiguity where none exists; and emphasizes the warning words on page 479 that "To go elsewhere in search of conjectures in order to restrict or extend it, is but to elude it."

The findings of the sitting justice on all the questions before him were correct.

*Exceptions overruled.*