**LEHMAN et al. v. CIVIL AERO-NAUTICS BOARD, et al.**

**PAN AMERICAN WORLD AIRWAYS, Inc. v. CIVIL AERONAUTICS BOARD.**

**Nos. 11500, 11503.**

United States Court of Appeals District of Columbia Circuit.

Argued March 16, 1953.

Decided Aug. 6, 1953.

Writ of Certiorari Denied March 8, 1954.

See 74 S.Ct. 513.

Prettyman, Circuit Judge, dissented.

Mr. Whitney North Seymour, New York City, for petitioners in No. 11500. Mr. Thomas G. Carney, Washington, D. C., also entered an appearance for petitioners in No. 11500.

Mr. James L. Highsaw, Jr., Chief, Litigation and Research Division, Civil Aeronautics Board, *pro hac vice*, by special leave of Court, with whom Messrs. Newell A. Clapp, Acting Asst. Atty. Gen.,

Department of Justice, Emory T. Nunneley, Jr., Gen. Counsel, and John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, were on the brief, for respondent in Nos. 11500 and 11503. Messrs. Charles H. Weston, Chief, Appellate Section, Antitrust Division, Department of Justice, and O. D. Ozment, Attorney, Civil Aeronautics Board, also entered appearances for respondent in Nos. 11500 and 11503.

Messrs. John W. Cross and Richard A. Fitzgerald, Washington, D. C., entered appearances for intervenor National Airlines, Inc., in No. 11500. Mr. C. Edward Leasure, Washington, D. C., entered an appearance for intervenor Continental Air Lines, Inc., in No. 11500.

Mr. Henry J. Friendly, New York City, entered an appearance for petitioner in No. 11503.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Several applications for approval of interlocking relationships, arising from directors of air carriers also serving as directors of another type of common carrier, were filed with the Civil Aeronautics Board. The applications were by various partners of Lehman Brothers, an investment banking firm, and air carriers of which they were directors.

In aid of its responsibility under Section 409(a) of the Civil Aeronautics Act of 1938, set forth in the margin insofar as pertinent,[1] the Board instituted a pro-

---

1. "(a) After one hundred and eighty days after the effective date of this section, it shall be unlawful, unless such relationship shall have been approved by order of the Board upon due showing, in the form and manner prescribed by the Board, that the public interest will not be adversely affected thereby—

"(1) For any air carrier to have and retain an officer or director who is an officer, director, or member * * * in any other person who is a common carrier or is engaged in any phase of aeronautics.

"(2) For any air carrier, knowingly and willfully, to have and retain an officer

or director who has a representative or nominee who represents such officer or director as an officer, director, or member * * * in any other person who is a common carrier or is engaged in any phase of aeronautics.

"(3) For any person who is an officer or director of an air carrier to hold the position of officer, director, or member * * * or to have a representative or nominee who represents such person as an officer, director, or member * * * in any other person who is a common carrier or is engaged in any phase of aeronautics." § 409(a), 52 Stat. 1002 (1938), 49 U.S.C.A. § 489(a).

ceeding on its own initiative for the purpose of determining whether the public interest would be adversely affected by partners of the banking firm, who served as directors of air carriers, acting as "representatives or nominees" of one another. The applications referred to were consolidated with this proceeding, which became known as Lehman Brothers Interlocking Relations Case.

The cases before us are on petitions filed under Section 1006 of the Civil Aeronautics Act of 1938 [2] and Section 10 of the Administrative Procedure Act,[3] for review of a Board order resulting from these proceedings. Insofar as it is now questioned, the order is divided into two principal parts.

I. One part deals with an application by Mr. Robert Lehman and Pan American World Airways, Inc., an air carrier hereinafter referred to as Pan American, for approval under the Act of an interlocking relationship arising because Mr. Lehman, a director of Pan American, became a director of United Fruit Company, a common carrier hereinafter referred to as United Fruit.[4]

Under Section 409(a)(1), n. 1, supra, it is unlawful for an air carrier to have as a director one who is also a director of a common carrier, the situation here presented, unless the particular relationship is approved by the Board upon due showing that the public interest will not be adversely affected. The Board, adopting the findings and conclusions of its examiner, disapproved in this instance. Mr. Lehman and Pan American in seeking reversal urge that the evidence required a finding that the holding of the two directorships by Mr. Lehman would not adversely affect the public interest.

The findings of the Board, supported by substantial evidence, are that Pan American and United Fruit are in competition to a consequential degree. The competition does not by any means extend to the full operations of either company. It is limited to the passenger tourist traffic going into the Caribbean area from the United States. Both companies seek and carry this traffic. Pan American publishes excursion fares, at less than regular round-trip rates for the summer season, between New York and Havana and between New Orleans and Havana. This brings it into competition with the tour service to Havana conducted by United Fruit. Pan American also publishes a shorter round-trip excursion fare between New York and New Orleans on the one hand and Mexico City on the other, and circle-trip excursions from New York and New Orleans to various points in the Caribbean. In short, as the examiner found, though the companies do not compete for the tourist passenger traffic between all points in the Caribbean,

> "* * * Both United Fruit and Pan American would be competing for tourist travel between the United States' points and the same vacation travel area."

This finding, adopted by the Board, we think is accurate. The further conclusion of the Board, therefore,

> "* * * that Pan American and United Fruit compete for the tourist travel between the United States, on the one hand, and Guatemala, Havana, and the Caribbean area, on the other",

is logical and reasonable. Petitioners urge to the contrary that the difference between a leisurely sea voyage via United Fruit and a fast air trip via Pan American eliminates the element of competition. In the former case the vacationing is principally in the traveling; in the latter it is principally at the place to which the traveler is air-borne. The general area traversed, however, is largely the same; and each carrier offers its own type of service in the effort to obtain the custom. Competition

---

2. 52 Stat. 1021 (1938), 49 U.S.C.A. § 646.

3. 60 Stat. 243, 5 U.S.C.A. § 1009.

4. Prior to making this application Mr. Lehman notified United Fruit he would not serve pending the Board's decision.

exists between types of vacationing in, and in traveling to and fro, the same area, and therefore between the carriers which seek the traffic. The prospective travelers cannot be isolated into two groups, the members of each of which must be assumed to have determined the kind of transportation they will use, or the kind of vacation they will choose, without considering an available alternative.

Petitioners point out that the percentage of tourist traffic to the total carried by United Fruit is small. This is true, but the amount is consequential. Furthermore, this business is not merely incidental to the other operations of United Fruit. It is an integral part of the whole.

As the Board said, there was an "opposition of interest between competitors for traffic". This being so the public interest might suffer through the restraint which such conflict might exert upon one who is a director of both companies and responsible for decisions in the conduct of their affairs. Congress seeks to avoid this by encouraging the development of aviation free of such impediments to competition. Section 2 of the Act, 52 Stat. 980 (1938), 49 U.S.C.A. § 402. In any event, the situation outlined demonstrates that it was within the competence of the Board to conclude that there had been no due showing that the potential restraint upon freedom of action would not adversely affect the public interest. Ames-Continental A.L., Interlocking Relationships, 1 C.A.A. 498, 500 (1939); Darling-Canadian Colonial, Interlocking Relationships, 1 C.A.A. 641, 647 (1940). Actual injury need not be awaited. To hold otherwise would be inconsistent with a statutory scheme which contemplates prior approval of the regulated relationships. The purpose of the Act is preventive. Furthermore, the Board's action does not depend upon the personal integrity of the director, which is unquestioned in these cases.[5]

II. The second part of the order under review deals with a very different situation. Here we do not have one man in two positions in which his duties or loyalties might conflict to the public injury. We have different men in different directorships. The question is whether nevertheless one is the representative of the other within the meaning of Section 409(a)(2) and (3), n. 1, supra. If so the potential conflict does exist. Under the provisions cited it is unlawful for an air carrier knowingly and willfully to have a director who has, or for any director of an air carrier to have, a representative who represents him in a company which is a common carrier or is engaged in any phase of aeronautics, unless the Board approves upon a showing that the public interest will not be adversely affected.

Petitioner Lehman is a director of Pan American; petitioner Joseph A. Thomas is a director of National Airlines, Inc., and of American Export Lines, Inc.; petitioner Frederick L. Ehrman is a director of Continental Air Lines, Inc., and Mr. John D. Hertz is a director of Consolidated Vultee Aircraft Corporation. All the companies referred to are in the aeronautic field and so must have Board approval of the kind of interlocking relationships which are made unlawful unless approved. Messrs. Lehman, Thomas, Ehrman, Hertz, and others, are also members of Lehman Brothers, a partnership which, as previously pointed out, conducts an investment banking business.

The Board held that an individual Lehman Brothers partner who is a director of a Section 409(a) company is a representative of another partner who is a director of another such company. The relationships thus found to exist

---

5. "The problem raised by a common director for two companies is not a question of personal integrity of the director. Rather it is whether the potential interests of the two companies may be in conflict. * * *" Pan Am. Airways-Hanes, Interlocking Relationship, 8 C.A. B. 617, 619 (1947), referred to by the Board in its decision now under review.

were disapproved as to those involving Pan American and National; Pan American and American Export Lines; Pan American and Consolidated Vultee; National and Pan American; National and Consolidated Vultee; and Continental Air Lines and Consolidated Vultee. Various others were approved as not adversely affecting the public interest. We are concerned only with those which were disapproved.

More precisely the Board concluded that a Lehman Brothers partner who is director of an air carrier has a representative "who represents such * * * director as * * * a director" in another Section 409(a) company if another Lehman Brothers partner is a director of the latter, coupled with the circumstances that he seeks on behalf of Lehman Brothers the security underwriting and merger negotiation services used by the company of which he is director. The underwriting of security issues and the conduct of merger negotiations constitute a substantial part of the business of Lehman Brothers, who have been employed for these purposes not infrequently by Section 409(a) companies. The partners feel free to solicit this business for their firm.

▇▇▇ Community of interest due to membership in a partnership is not in and of itself sufficient to require approval of the relationship incident to

partners being directors of Section 409(a) companies. It cannot be said that a director of an air carrier has a representative who represents him as a director of another Section 409(a) company solely because the two are partners in a third firm. For example, if the community of interest is due to membership in a partnership which owns a drug store it could hardly be said that this caused one partner to be the representative of another in their respective capacities as directors of Section 409(a) companies. Furthermore, in contrast with the Public Utility Holding Company Act, 49 Stat. 831 (1935), 15 U.S.C.A. § 79q(c), Congress has not regulated all interlocking relationship between an aeronautical company and an investment banker such as Lehman Brothers.[6] But we must consider the facts of the case in the light of the purpose of Congress to keep the developing aviation industry free of unhealthy interlocking relationships, though this purpose must be carried out only as the statute provides. The relevant findings which point up the problem are not in dispute. The underwriting activities of Lehman Brothers is a substantial part of its business; substantial fees are also obtained by Lehman Brothers from merger negotiations. Profits from the fees are shared by the partners.[7] Section 409(a) companies, with Lehman Brothers partners as directors,[8] need and use both types of

6. In 1943, H.R. 3420, to amend the Civil Aeronautics Act of 1938, was reported out of the Committee on Interstate and Foreign Commerce. Section 409(a) (B) of this bill made it unlawful "for any air carrier to have and retain an officer or director who is an officer, director, or member of, or who controls, any other person— * * * (B) who is an underwriter * * *." The bill also made it unlawful for a director of an air carrier "to hold the position of officer, director, or member" of any person who is an underwriter. Commenting on this section of the bill, the House Report states: "The principal change of substance is the inclusion within the scope of section 409 of interlocking relationships between * * * air carriers and underwriters." H.R.Rep.No. 784, 78th Cong., 1st Sess.

27 (1943). The bill was committed to the Committee of the Whole House on the State of the Union and ordered to be printed, 89 Cong.Rec. 8607 (1943), and there its history ends.

7. While Section 409(b), 52 Stat. 1003 (1938), 49 U.S.C.A. § 489(b), prohibits a director of an air carrier from receiving for his own benefit any money in respect of the sale of securities of such carrier, this does not apply to the director of other Section 409(a) companies.

8. For simplification "director" is used as illustrative, rather than involving the text of the opinion in enumerating the other officers and persons mentioned in Section 409(a). Directorships alone are involved in the present case.

services, and the partner directors seek such business for the partnership. In doing so they act as representatives of the partnership. It follows that they act as representatives of fellow partners, some of whom are directors of air carriers. Is this representation within the meaning of the statute? Does Mr. Thomas, to use his case as illustrative, who is a Lehman Brothers partner and also a director of National Airlines, represent, as director of National Airlines, Mr. Lehman, another Lehman Brothers partner and director of Pan American? We think that the affirmative answer of the Board should not be disturbed. For the situation comes to more than some community of interest and some sharing of common benefits as partners. The particular common interest and benefits are among directors of the regulated industry with respect to industry matters. The partnership link does not extend merely to a type of business remote from the aeronautical industry in which the partners are directors; it is with respect to business activities of air carriers and other aeronautical companies enumerated in Section 409(a). In these activities there is not only literal representation by one partner of another in partnership business but the particular partnership business is as well the business of aeronautical enterprises of which the partners are directors. When Mr. Thomas, again to illustrate, as director of National seeks to guide that company's underwriting business to Lehman Brothers he acts in the interest of and for the benefit of Mr. Lehman who is not only his underwriting partner but is also a director of an air carrier, Pan American. Mr. Lehman the partner is the same Mr. Lehman the director. The Board is not required to separate him into two personalities, as it were, and to say that Mr. Thomas represents him as a partner but not as a director, if, as is the case here, the representation is in

regard to the carrying on of the affairs of Section 409(a) companies. The undoubted representation which grows out of the partnership we think follows into the directorships when the transactions engaged in are not only by the partners but concern companies regulated by the statute, of which the partners are directors. This is representation within not only the language but the meaning of the statute.

There are indeed arguments to the contrary but we think they are not sufficiently cogent to lead to a different result. In addition to what we have pointed out, supra, see n. 6, there was testimony before the House Committee on Interstate and Foreign Commerce, Hearings before House Committee on Interstate and Foreign Commerce on H.R. 9738, 75th Cong., 3d Sess. 45 (1938), by the Assistant General Counsel of the Treasury who assisted in drafting the bill indicating that the provisions in question were designed to prohibit an officer or director of an air carrier from "employing" a representative as director in another air carrier, common carrier or aeronautical company, so as to prevent evasions. But we think the terms of the statute may not be so narrowly construed as to cover only the "employment" of a representative. Indeed, unless the relationships here involved are subject to approval under the statute the evasion sought to be avoided would be facilitated. The petitioners also point out, truly, that Lehman Brothers partners who are directors of the regulated companies have acted on occasions quite independently and at variance with the views of each other. But if in important respects, as the Board found to be the case, we think properly, there is representation then the required approval is essential. The statute does not speak of control by one director over the other but of representation.[9] This is present in law under

9. Compare Gilman v. Jack, Me.1952, 91 A. 2d 207, involving Section 17(c) of the Public Utility Holding Company Act, supra. See, also, Rattner v. Lehman, 2 Cir., 1952, 193 F.2d 564, under the Securities Exchange Act of 1934, 48 Stat. 896 (1934), 15 U.S.C.A. § 78p(b).

the statute when it exists in fact in substantial matters affecting the regulated companies. The purpose of Congress is not served by choosing from among available definitions of "representative" a narrow meaning inconsistent with the purpose to keep the vital aeronautical industry, in its component parts, independent and competitive to the extent necessary to insure sound development in accordance with the needs of the foreign and domestic commerce of the United States, the postal services, and the national defense. Section 2, Civil Aeronautics Act of 1938, supra. In addition, as is obvious from the provisions of Section 409(a), Congress deemed the public interest to require that the industry be free of the conflicting interests of interlocking relationships which might prevent unimpeded choice of action on the part of directors. It is true that the examiner found, with the approval of the Board, that the record is devoid of indication that Lehman Brothers directors have used their partnership relations to the detriment of companies of which they are directors. But in furthering the public policy embodied in the statutory provisions Congress has seen fit to prevent relationships deemed unhealthy without requiring proof that the directors have engaged in specific acts of a detrimental character. It is the relationship itself which is prevented unless approved, because harm might occur to the industry and to the public. The regulations, as we have said, are preventive, as well as curative should the latter be necessary.

In this court petitioners have rested this branch of their case solely upon the question of representation. For this reason we do not discuss the conclusions of the Board that in the instances under review the representative relationships found to exist adversely affect the public interest and should be terminated.[10]

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

I do not agree with my brethren in these cases.

Point I of the opinion deals with the presence of Mr. Robert Lehman on the boards of Pan American World Airways and United Fruit Company. United Fruit is engaged in the fruit business, principally importing from Central and South American countries. On some of its boats it has accommodations for a few passengers. They make leisurely ocean voyages, measured in days or weeks, between New Orleans and Caribbean ports. That service attracts people who want a slow sea trip. Pan American is an airline company. It makes flights, largely originating in New York, which are measured in hours between New Orleans and Caribbean ports. It attracts people who want to get to the latter ports, and get there fast. For example, Pan American takes passengers to or from Guatemala in five hours; United Fruit takes either eleven or eighteen days. To say that the competition between these two could create a conflict of interest which might produce results not in the public interest is without support in the facts, in my judgment. Of course there is a sort of competition between them, just as in some senses there

---

10. Though the Board, in reaching its conclusion on representation and adverse interest does not appear to rely upon these facts, the application of Mr. Lehman and Pan American discloses transactions by Mr. Lehman and Lehman Brothers in stock of air carriers and common carriers, including on the part of Mr. Lehman, Continental Air Lines, and, on the part of Lehman Brothers, American Airlines, American Export Lines, and Capital Airlines, and that Mr. Lehman's interest in the partnership includes participation in partnership capital, which in turn includes these stocks. The application of National Airlines and Joseph A. Thomas discloses that in addition to his interest in stock held by Lehman Brothers, including that of American Export Lines, Consolidated Vultee Aircraft, Continental Air Lines, and National Airlines, he had financial interest in American Export Lines, American Overseas Airlines, Pacific Northern Airlines, and National Airlines.

is competition between all merchants of goods or services. But the totally different services proffered by these two companies make it wholly unrealistic to say that the public interest would be affected adversely by the presence of the same man on the two boards of directors. The theory of the statute is that a director of a common carrier would, in many cases, tend to stifle the development of a competing air carrier. Nothing in this record, as I see it, indicates that United Fruit might tend to obstruct Pan American because of the fact that one operates on and the other above the Gulf and the Caribbean Sea. The respective businesses are simply different sorts of business.

Point II deals with the presence of three different partners in Lehman Brothers on three different boards of directors. We can discuss the problem from the standpoint of two of them. The section of the Civil Aeronautics Act [1] which deals with interlocking relationships contains six subparagraphs, each of which describes a relationship made unlawful unless approved by the Board. The one with which we are concerned is subparagraph (2). It reads:

"For any air carrier, knowingly and willfully, to have and retain an officer or director who has a representative or nominee who represents such officer or director as an officer, director, or member, or as a stockholder holding a controlling interest, in any other person who is a common carrier or is engaged in any phase of aeronautics."

Mr. Robert Lehman is a director of Pan American. Mr. Joseph A. Thomas is a director of National Airlines. The decision of the court is that Mr. Lehman has a representative or nominee, i. e., Mr. Thomas, who represents him as a director in National Airlines. The court also holds that Mr. Thomas has a repre-

sentative or nominee, that is, Mr. Lehman, who represents him as a director of Pan American. The premise from which these conclusions are drawn is that Mr. Lehman and Mr. Thomas are both partners in the partnership of Lehman Brothers and that Lehman Brothers upon occasion is awarded underwriting business and participates in merger negotiations on behalf of Pan American and National. To my way of thinking, this latter fact does not make Mr. Thomas the representative or nominee of Mr. Lehman, or vice versa, within the meaning of the statute. My view rests upon what appears to me to be the plain language of the statute.

Of course the presence of two partners on two boards of directors is the sort of interlocking relationship which Congress might have declared unlawful unless approved by the Board. In other statutes Congress has done just that. For example, in the Public Utility Holding Company Act,[2] Congress prohibited a registered holding company from having as a director any director of a bank, except as permitted by the Securities and Exchange Commission. And the Banking Act of 1933, as amended,[3] provided that no director of any corporation and no partner of any partnership primarily engaged in the underwriting of securities should serve at the same time as a director of a member bank, except in cases in which the Board of Governors of the Federal Reserve System should allow such service. Those are broad provisions and demonstrate that Congress was familiar with such language when it wished to prohibit interlocking relationships in general. It did not do so in the Civil Aeronautics Act. It described and delimited the interlocking relationship which it was prohibiting. It prohibited a director on one board from having a representative or nominee who represented him on another board.

---

1. Section 409(a), 52 Stat. 1002 (1938), as amended, 49 U.S.C.A. § 489(a).

2. Section 17(c), 49 Stat. 831 (1935), 15 U.S.C.A. § 79q(c).

3. Section 32, 48 Stat. 194 (1933), as amended, 12 U.S.C.A. § 78.

I am fully conscious of those cases in which the Supreme Court has held that the courts may look to the general purpose of the statute and construe it accordingly.[4] But it seems to me that that rule is intended to apply only where there is an ambiguity in the language of the statute and the court cannot ascertain the meaning of the language without resort to the legislative purpose. But that rule does not, it seems to me, permit the courts to stretch perfectly plain language so as to cover a situation which the judges may feel was within the general scope of the purpose which Congress must have had in mind. To be specific, when Congress prohibits one defined sort of interlocking relationship, the courts cannot say that the purpose of Congress was to prohibit interlocking relationships and that therefore any variety of such relationship falls within the ban. The courts ought to apply a statute the way Congress wrote it, so long as they can ascertain from the language used the meaning of the statute. Beyond that the content of a statute is a matter for Congress, and if the statute as written does not cover a situation deemed by the administrative officials to be adverse to the public interest, the problem ought to be presented to Congress. In short, it seems to me in the present case that Congress might have written something different from what it did write. But it did not do so, and we ought to apply the plain terms of the written provision. Only under the most strained interpretation can Mr. Thomas be said to be a representative or nominee of Mr. Lehman on the board of National. In the ordinary meaning of the words "representative or nominee" he simply was not. The same applies to Mr. Lehman as a representative or nominee of Mr. Thomas on the board of Pan American.

It is of interest to note that the legislative history at several points supports the view that I have expressed. Section 410 of S. 3845, 75th Congress, 3rd Session, a forerunner of the present statute, contained, in addition to the words "a representative or nominee", the words "or otherwise". These latter two words were omitted in the final enactment. In the hearing before the House Committee on H.R. 9738, 75th Congress, 3rd Session, the Assistant General Counsel of the Treasury Department said: "In addition, in order to prevent evasion of these provisions, the present bill prohibits an officer or director of an air carrier from employing a representative or nominee to act as an officer or director in another air carrier, common carrier, or aeronautical company." It appears that subparagraph (2) of Section 409(a), with which we are concerned, was enacted to prevent evasion of the direct prohibition against the same person holding office in two air carriers. Counsel for the petitioners say that the target of the subparagraph was "vicarious directorial service". It seems to me that that characterization is accurate.

I would reverse the order of the Board on both Point I and Point II.

4. See, e.g., Board of Governors v. Agnew, 1947, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408.